UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DAVID CARABALLO,                                              COMPLAINT

                                  Plaintiff,     18 Civ. 10335

           -against-

CITY OF NEW YORK, JONATHAN EPPS, JONATHAN
SUERO, and ANTHONY MANGANO,                                   **JURY TRIAL DEMANDED**

                                  Defendants.
------------------------------------------------------------------------x

      Plaintiff David Caraballo, by his attorneys, Law Office of Gregory P. Mouton, Jr., LLC, respectfully alleges:

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Mr. Caraballo's rights under the Constitution of the United States. As set forth herein, the individual defendants violently attacked Mr. Caraballo during the process of placing him under arrest. They did so without identifying themselves as police officers, and continued their attack on Mr. Caraballo even when he was face down and immobile on the ground and in handcuffs.

2. The attack on Mr. Caraballo was captured on video.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

4. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

6. Mr. Caraballo demands a trial by jury in this action.

## PARTIES

7. At all times relevant herein, Plaintiff David Caraballo was a resident of the County of New York, State of New York.

8. Defendant City of New York is a municipal organization organized under the laws of the State of New York.

9. Defendant City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant City of New York.

10. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

11. At all times relevant herein, Defendant Police Officer Jonathan Epps ("Epps") was an officer, employee, and/or agent of Defendant City of New York.

12. At all times relevant herein, Defendant Epps was acting within the scope of his employment with Defendant City of New York.

13. At all times relevant herein, Defendant Epps was acting under color of state law.

14. Defendant Epps is sued in his individual and official capacities.

15. At all times relevant herein, Defendant Police Officer Jonathan Suero ("Suero") was an officer, employee, and/or agent of Defendant City of New York.

16. At all times relevant herein, Defendant Suero was acting within the scope of his employment with Defendant City of New York.

17. At all times relevant herein, Defendant Suero was acting under color of state law.

18. Defendant Suero is sued in his individual and official capacities.

19. At all times relevant herein, Defendant Sergeant Anthony Mangano ("Mangano") was an officer, employee, and/or agent of Defendant City of New York.

20. At all times relevant herein, Defendant Mangano was acting within the scope of his employment with Defendant City of New York.

21. At all times relevant herein, Defendant Mangano was acting under color of state law.

22. Defendant Mangano is sued in his individual and official capacities.

STATEMENT OF FACTS

23. On November 7, 2015, Mr. Caraballo was entering a building located at 15 St. James Place, New York, New York.

24. Unbeknownst to Mr. Caraballo, the individual defendants were following him into the building. The individual defendants were wearing plainclothes and had no markings that would identify them as police officers.

25. One of the individual defendants was wearing what appeared to be a dark colored shirt. This is the first defendant that appears on the video. This defendant is referred to herein as "Dark Shirt Defendant".

26. One of the individual defendants was wearing what appeared to be a light colored shirt. This is the second defendant that appears in the video. This defendant is referred to herein as "Light Shirt Defendant 1".

27. A second individual defendant was wearing what appeared to be a light colored shirt. This defendant is the third defendant to appear in the video. This defendant is referred to herein as "Light Shirt Defendant 2".

28. As Mr. Caraballo entered the building, he noticed that Dark Shirt Defendant was following behind him. Mr. Caraballo entered the lobby and Dark Shirt Defendant walked past him and then suddenly turned around and attacked him. This occurred approximately 3-4 seconds after Mr. Caraballo entered the building, and Dark Shirt Defendant did not show his badge or announce that he was a police officer. At the time that this attack occurred, Mr. Caraballo had no idea that there was a police officer.

29. Mr. Caraballo can be seen in the video running backwards on the walkway in front of the building with his arms up fending off the attack from Dark Shirt Defendant, a person Mr. Caraballo did not know.

30. Dark Shirt Defendant shoves Mr. Caraballo onto the ground, where he lands on his back and then rolls over onto his side.

31. Dark Shirt Defendant then got on top of Mr. Caraballo as he was laying on the ground on his side and forced Mr. Carballo onto his stomach before placing Mr. Caraballo, upon information and belief, into a physical hold.

32. At approximately 20 seconds into the video, Light Shirt Defendant 1 can be seen entering the view of the camera on the walkway. After initially running past Mr. Caraballo and Dark Shirt Defendant, Light Shirt Defendant 1 can be seen joining Dark Shirt Defendant in attacking Mr. Caraballo.

33. Defendant Light Shirt Defendant 1 at no time announced that he was a police officer, nor did he display his badge.

34. Dark Shirt Defendant and Light Shirt Defendant 1 were placing Mr. Caraballo's head, neck, and arms into painful positions while also using their bodyweight to restrain Mr. Caraballo. Mr. Caraballo was not wrestling with the officers and, in fact, could not have been, as he was pinned down face down on the ground.

35. At approximately 28 seconds into the video, Light Shirt Defendant 2 can be seen entering the view of the camera on the walkway.

36. Light Shirt Defendant 2 can then be seen punching Mr. Caraballo six times in his face, head, back, and ribs using all of his strength and bodyweight. Light Shirt Defendant 2 punches Mr. Caraballo so hard that he loses his balance and falls on top of Dark Shirt Defendant.

37. While this was happening, Dark Shirt Defendant and Light Shirt Defendant 1 violently twisted Mr. Caraballo's arms behind his back causing injury and pain to Mr. Caraballo's shoulders and arms.

38. Light Shirt Defendant 1 can then be seen removing handcuffs from his waist and placing them on Mr. Caraballo.

39. Then, Dark Shirt Defendant can be seen in the video brutally punching Mr. Caraballo six times in his face, head, back, and ribs as he lies face down on the ground handcuffed.

40. The handcuffs were placed on Mr. Caraballo excessively tightly, causing extreme pain and swelling to Mr. Caraballo's wrists and hands that lasted well after Mr. Caraballo's arrest.

41. At no time during the struggle did the individual defendants identify themselves, nor did Mr. Caraballo strike any of the individual defendants or reach for, grab, display, or use any weapon.

42. Defendants, by their conduct toward Mr. Caraballo as alleged herein, violated Mr. Caraballo's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

43. As a direct and proximate result of this unlawful conduct, Mr. Caraballo sustained the damages alleged herein.

## FIRST CAUSE OF ACTION
*Excessive Force*

44. Mr. Caraballo repeats and realleges each and every allegation as if fully set forth herein.

45. The individual defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Mr. Caraballo.

46. As a direct and proximate result of this unlawful conduct, Mr. Caraballo sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*Monell*

47. Mr. Caraballo repeats and realleges each and every allegation as if fully set forth herein.

48. This is not an isolated incident. Defendant City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Caraballo.

49. Defendant City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

50. Defendant City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

51. Defendant City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

52. The underlying application of excessive force is not an isolated incident. Defendant City of New York is aware, from lawsuits, notices of claims, press accounts, complaints filed with the NYPD's Internal Affairs Bureau, and complaints filed with the Civilian Complaint Review Board, that many NYPD officers, including the individual defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters. Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct. See, e.g., Graham v. City of New York, 928 F.Supp.2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriguez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F.Supp.2d 347 (S.D.N.Y.

2010) (same); Williams v. City of New York, 06 CV 6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same); see also Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video, N.Y. DAILY NEWS, Sept. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one officer as the other cop pinned him down… [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie. Solivan's mother and two younger brothers were in the University Avenue Apartment at the time. After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole…"); Daniel Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y. DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500,000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.com/news/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor-article-1.1018037 (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video); NEW

York City Civilian Complaint Review Board, "2014 Annual Report", https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/annual_bi-annual/2014_annual.pdf (" In 2014, 51% of all complaints contained one or more force allegations, compared to 50% in 2010…"); New York City Civilian Complaint Review Board, "2013 Annual Report", https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/annual_bi-annual/2013_annual.pdf ("In 2013, 53% of all complaints contained one or more force allegations, compared to 52% in 2009…"); New York City Civilian Complaint Review Board, "2012 Annual Report", https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/annual_bi-annual/2012_annual.pdf ("In 2012, 50% of all complaints contained one or more force allegations, compared to 48% in 2011.").

53. Specifically, in relation to Defendant Mangano, Defendant City of New York was aware of prior allegations of excessive force being used by Defendant Mangano on other occasions, including from an incident on September 21, 2013, when Defendant Mangano repeatedly punched and stomped on the face of an arrestee without justification.

54. Specifically, in relation to Defendant Epps, Defendant City of New York was aware of prior allegations of excessive force being used by Defendant Epps on other occasions, including from an incident on April 15, 2010, in which Defendant Epps excessively tightened handcuffs on an arrestee.

55. Furthermore, Defendant City of New York turns a blind eye to the violent culture within the NYPD, a culture of violence that extends not just between officers and arrestees, but between officers themselves. This violent culture has produced officers within the NYPD that

without excuse or justification employ unconstitutional violent means to make arrests when less violent and non-violent methods are more appropriate.

56. Specifically, Defendant City of New York promotes settling disputes even between the officers that make up the NYPD through the use of a NYPD fight club that holds grudge matches known as "smokers" where members of the NYPD "settle grudges with their fists." Members of the NYPD, including supervising officers, gather to watch these "smokers" in large groups, with some estimates showing that the crowd will have 2,500 people in attendance.

57. Lieutenant Dave Siev has commented that, "In the [NYPD] they always had smokers, where either grudges would get settled or people would just want to fight."

58. At least one of the defendants herein, Defendant Mangano, has participated in a smoker.

59. NYPD's fight club has been described as "appalling", "absolutely outrageous", and "medieval". This practice also been noted to raise "a certain type of violent masculinity to the identification of what a police officer should be," while observing that, although police officers must be tough, that toughness need not include "this kind of violent behavior."

60. These policies, practices, and customs were the moving force behind Mr. Caraballo injuries.

PRAYER FOR RELIEF

WHEREFORE, Mr. Caraballo respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

  (c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

  (d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
    November 6, 2018

              By: /s/
                  Gregory P. Mouton, Jr., Esq.
                  Law Office of Gregory P. Mouton, Jr., LLC
                  *Attorneys for Plaintiff David Caraballo*
                  305 Broadway, 7th Floor
                  New York, NY  10007
                  Phone & Fax: (646) 706-7481

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID CARABALLO,

Plaintiff,

-against-

CITY OF NEW YORK, JONATHAN EPPS, JONATHAN SUERO, and ANTHONY MANGANO,

Defendants.

COMPLAINT

**LAW OFFICE OF GREGORY P. MOUTON, JR., LLC**

305 Broadway, 7th Floor
New York, NY  10007
Phone & Fax: (646) 706-7481