UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID CARABALLO,

               Plaintiff,

    – against –

CITY OF NEW YORK, JONATHAN EPPS,
JONATHAN SUERO, and ANTHONY
MANGANO,

               Defendants.

**OPINION & ORDER**

18 Civ. 10335 (ER)

RAMOS, D.J.:

Before the Court is Plaintiff David Caraballo's motion for reconsideration of the Court's June 26, 2020 Order.[1] *See* Mot. Recons., Doc. 33. Pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 6.3, Caraballo asks this Court to grant such reconsideration, compel Defendants City of New York (the "City"), Jonathan Epps, Jonathan Suero, and Anthony Mangano to produce the "entire underlying disciplinary files for the Disclosed Disciplinary Investigations[,]" "labeled photographs" of defendants Jonathan Epps, Jonathan Suero, and Anthony Mangano, and any other relief the Court deems necessary. *Id*. at 1. For the reasons set forth below, Caraballo's motion for reconsideration is **DENIED**.

## I.    BACKGROUND

Caraballo brought this action against Defendants pursuant to 42 U.S.C. § 1983 to vindicate alleged violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to

---

[1] Plaintiff has on several occasions referred to a *July* 26, 2020, Order. *See, e.g.*, Mot. Recons. at 1 (seeking "reconsideration of the Court's July 26, 2020, Order"); Doc. 35 at 1; Doc. 38 at 7. For the sake of clarity, the Court notes that the subject of the instant motion for reconsideration is the Order issued on June 26, 2020. *See* Transcript of Discovery Conference held on June 26, 2020 ("Trans."), Doc. 34-1.

the Constitution of the United States.  Compl., Doc. 1.  The Complaint alleges that Defendants

Officer Epps, Officer Suero, and Sergeant Mangano (collectively, the "individual defendants") of

the New York City Police Department (NYPD) "violently attacked Mr. Caraballo during the

process of placing him under arrest" on November 7, 2015.  Compl. ¶ 1.  Caraballo alleges that

the individual defendants used excessive and unreasonable force in violation of the Fourth and

Fourteenth Amendments and brings a *Monell* claim against the City.  Compl. ¶¶ 44–46.

During the course of discovery, Defendants served Caraballo with initial disclosures

pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) and Local Rule 83.10.  Pl.'s Mem.

Supp., Doc. 35 at 2.  Among other things, Local Rule 83.10 requires the City to disclose "the

CCRB [Civilian Complaint Review Board] and CPI [Central Personnel Index] indices of

complaints or incidents that are similar to the incident alleged in the complaint or that raise

questions about the defendant's credibility."  Local R. 83.10(5)(a)(iii).  Therefore, in addition to

their Rule 26(a) disclosures, Defendants disclosed the existence of various disciplinary

investigations as required by Local Rule 83.10(5)(a)(iii).  Pl.'s Mem. Supp. at 2.

Caraballo subsequently served Defendants with discovery requests, including 13 requests

for "[a]ll documents concerning" particular disciplinary investigations that had been disclosed

pursuant to Local Rule 83.10.  Mot. Compel, Doc. 24 at 2–3; *see* Doc. 24-1 (Document Request

Nos. 1–10 & 12–14).  Defendants refused to turn over the entire file for any of the investigations,

agreeing only to produce the closing reports for some investigations.[2]  Mot. Compel at 3.

Caraballo also requested labeled photographs of each of the officers; Defendants objected and

---

[2] According to Caraballo, as of February 24, 2020, when the motion to compel was filed, Defendants had agreed to
produce the closing reports for the investigations specified in Document Request Nos. 3, 5, 10, 12, 13, and 14.  Mot.
Compel at 3 n.5.

refused to provide the requested photographs.  *Id.*; *see* Doc. 24-1 at 11–12 (Document Request Nos. 15–17).

On February 24, 2020, Caraballo filed a letter motion asking the Court to compel defendants to produce "the underlying files for various disciplinary investigations conducted into the individual defendants and disclosed to Plaintiff pursuant to Local Rule 83.10" as well as labeled photographs of the individual defendants.  Mot. Compel at 2–3.  Defendants opposed, *see* Doc. 26, and the Court directed the parties to appear for a discovery conference and ordered them to meet and confer prior to such conference, *see* Doc. 27.[3]  The parties met and conferred on June 16, 2020, regarding all of the discovery disputes raised in Caraballo's February 24 letter motion.  Doc. 32 at 1.  However, Defendants did not agree to produce any of the underlying disciplinary records or the requested photographs.[4]  *Id.*

On June 26, 2020, the parties appeared by telephone for a discovery conference during which the Court heard the parties on various disputed discovery requests.  With respect to disciplinary files, Caraballo contended that Defendants should be required to provide the full underlying investigative files associated with particular past complaints or investigations because the closing reports would not contain the information necessary to determine if prior incidents were adequately investigated.  Trans., Doc. 24 at 9:13-23.  Defendants argued that closing reports would provide sufficient information for that purpose and noted that the production of entire investigative files would raise issues regarding the ability to obtain necessary releases.  Trans. 10:4-15.  The Court directed Defendants to produce the closing reports for the

---

[3] The discovery conference, originally scheduled for April 2, 2020, was later adjourned to June 26, 2020.  Doc. 30.

[4] Among other things, Defendants agreed to provide the closing report for the Central Personnel Index (CPI) file with Serial No. 15693, Doc. 32 at 1, the investigation for which Document Request No. 1 seeks all files, Doc. 34-1 at 2.

investigations identified in Document Request Nos. 1, 3, 4, 5, 6, 7, 8, 10, 12, 13, and 14, and

declined to require Defendants to turn over underlying disciplinary files in their entirety.  Trans.

10:21-24.  With respect to the requests for photographs of the individual defendants, Caraballo

asserted such discovery was needed so Caraballo could "identify the officers and at what point

they engaged in the conduct that was depicted in the video" of the incident.  Trans. 11:11-17.

Defendants, on the other hand, argued that such discovery is normally granted where there are

"John or Jane Doe officers" and the plaintiff is attempting to determine which officers are

properly named as defendants, neither of which applies in the present case.  Trans. 11:20-12:9.

After considering the parties' positions, the Court declined to require Defendants to produce

photographs of the officers.[5]  Trans. 12:10-11.  On July 10, 2020, Caraballo filed the instant

motion for reconsideration.  Doc. 33.

## II.    LEGAL STANDARD

Local Rule 6.3 provides for reconsideration where the court has overlooked controlling

decisions or factual matters that were "put before it on the underlying motion . . . and which, had

they been considered, might have reasonably altered the result before the court."  *Mikol v.*

*Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns &*

*Mktg., Inc.*, No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)).

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed

sparingly in the interests of finality and conservation of scarce judicial resources.'"  *Parrish v.*

*Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec.*

*Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  Local Rule 6.3 is "narrowly construed and

strictly applied so as to avoid repetitive arguments on issues that have been considered fully by

---

[5] The Court also denied Caraballo's discovery requests related to the "smokers" and the net worth of the individual defendants.  Trans. 15:25-16:1, 17:7-11.  The instant motion does not seek reconsideration of either of these denials.

4

the Court." *Mikol*, 554 F. Supp. 2d at 500 (quoting *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)) (internal quotation marks omitted).

"A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  Local Rule 6.3 provides that movant shall "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied."  *Mikol*, 554 F. Supp. 2d at 500 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

A motion for reconsideration is not a substitute for appeal, *Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407, 418 (S.D.N.Y. 2012), nor is it a vehicle for a party dissatisfied with the Court's ruling to voice its disagreement with the decision. *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512–13 (S.D.N.Y. 2009). "Courts have repeatedly been forced to warn litigants that such motions should not be made reflexively to reargue those issues already considered when a party does not like the way the original motion was resolved." *Boart Longyear Ltd.*, 869 F. Supp. 2d at 418 (quoting *Makas v. Orlando*, No. 06 Civ. 14305 (DAB), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008)) (internal quotation marks omitted); *see, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 884 F. Supp. 2d 92, 96 (S.D.N.Y. 2012) ("The provision for

reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided."); *see also Assoc. Press v. U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (motion for reconsideration is not "an occasion for repeating old arguments previously rejected").  Whether to grant or deny a motion for reconsideration is within the sound discretion of the district court.  *Premium Sports Inc. v. Connell*, No. 10 Civ. 3752 (KBP), 2012 WL 2878085, at *1 (S.D.N.Y. June 11, 2012) (citing *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### III.    UNDERLYING INVESTIGATIVE FILES

With respect to the Court's denial of Caraballo's motion to compel the production of entire underlying investigative files, Caraballo argues that reconsideration is justified on two grounds.  Caraballo asserts that the Court (1) "overlooked the fact that the Defendants themselves determined that [the] Disclosed Disciplinary Investigations were similar in nature to the claims in this case or bore on officer credibility pursuant to Local R. 83.10(5)(a)(iii)" and (2) "overlooked controlling decisions from the Second Circuit that have determined that the underlying files are relevant to meeting the 'deliberate indifference' standard the Supreme Court established for proving a *Monell* claim."  Pl.'s Mem. Supp. at 4-5.

First, the Court did not overlook the fact that Caraballo seeks the underlying files for investigations which Defendants disclosed pursuant to Local Rule 83.10.  As an initial matter, Caraballo has already raised this argument in support of his motion to compel.  *See, e.g.*, Doc. 32 at 1 n.1 ("Plaintiff had also demanded copies of thirteen other disciplinary files, the existence of which were disclosed to Plaintiff pursuant to relevancy determination under Local Rule 83.10, but which Defendants now are attempting to classify as irrelevant."); Doc. 24 at 2-3 & n.4.

Indeed, Defendants' response to Caraballo's motion to compel acknowledges and counters precisely this argument.  Doc. 26 at 3.

Additionally, Caraballo's memoranda in support of the instant motion fail to identify controlling authority—or *any* authority—to support the proposition that Local Rule 83.10 somehow provides a basis for the production of the entire investigative file underlying a complaint or investigation disclosed pursuant to that same rule.  *See* Pl.'s Mem. Supp. at 5-6. The City is required to disclose "the CCRB [Civilian Complaint Review Board] and CPI [Central Personnel Index] indices of complaints or incidents that are similar to the incident alleged in the complaint or that raise questions about the defendant's credibility."  Local R. 83.10(5)(a)(iii). The Rule, as Caraballo notes, requires the City to disclose "the *existence* of . . . disciplinary investigations[.]"  Pl.'s Mem. Supp. at 2 (emphasis added).  It does not simultaneously require the production of the complaint itself or the closing report.  This is particularly clear seeing as the immediately preceding subsection of the Rule *does* require the production of additional files and it does so in no uncertain terms.  *See* Local R. 83.10(5)(a)(ii) ("The City shall serve on plaintiff . . . [a]ny CCRB records and the IAB closing report regarding the incident that forms the basis of the complaint.").

Even if the Court had overlooked the fact that the City disclosed the existence of these particular investigations or incidents pursuant to Local Rule 83.10, the Court's June 26 Order would remain unchanged.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [among other factors] . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b).  Caraballo's argument regarding Local Rule 83.10 speaks only to part of the

calculation under Rule 26(b): whether the underlying investigative files are *relevant* to his

claims, particularly his *Monell* claim. *See e.g.*, Pl.'s Reply, Doc. 38 at 4 ("All of the disciplinary

files are clearly relevant as they 'are similar to the incident alleged in the complaint or that raise

questions about the defendant's credibility.'" (quoting Local R. 83.10(5)(a)(iii))); Doc. 32 at 1

n.1. But even assuming that the underlying files are relevant, it does not follow that they are

necessarily discoverable because Rule 26(b) clearly instructs the Court to consider whether the

requested discovery is both "relevant . . . *and proportional* to the needs of the case[.]" Fed. R.

Civ. P. 26(b).

    The Court did not deny Caraballo's motion to compel the underlying investigative files

because it deemed the investigations or complaints irrelevant but because the requests for entire

underlying investigative files were overbroad and disproportional. Two factors are of particular

importance here: (1) the availability and content of the closing reports and (2) the likely barriers

and burdens involved in turning over entire investigative files. As noted, the Court's June 26

Order directed Defendants to turn over 11 closing reports. Trans. 10:21-24. Caraballo

contended that closing reports would be insufficient, and therefore entire underlying

investigative files were necessary, because the closing reports would lack the information

Caraballo needed to determine whether prior complaints were adequately investigated. Trans.

9:13-23. In opposing Caraballo's requests, Defendants asserted that the closing reports would

provide sufficient information to make such a determination. Generally speaking, a closing

report will "give [the] reasoning as to why [the CCRB or IAB] arrived at the determination they

did" with respect to a particular investigation or complaint.[6] Trans. 10:13-15. Additionally,

---

[6] As noted in the June 26 discovery conference, there may be some slight differences between the contents of an
IAB closing report and a CCRB closing report. According to counsel for Defendants, a CCRB closing report would
include the CCRB's finding with respect to a particular complaint or investigation; the entire CCRB investigative
file would include "interviews, police paperwork for that particular investigation, [and] remarks from the underlying

Defendants highlighted barriers to the production of underlying investigative files, including potential challenges in obtaining the releases necessary to turn over such files.  Trans. 10:4-9. Given the accessibility of the closing reports, the representations by Defendants as to the information typically contained in such reports, and the barriers and burdens to disclosing entire investigative files, the Court determined that Caraballo's request was overbroad.  In the Court's view, the closing reports provide Caraballo with sufficient detail regarding the manner in which previous investigations were conducted such that he can proceed with his *Monell* claim.

Second, the Court did not overlook controlling authority with respect to the relevance of underlying investigative files to *Monell*'s "deliberate indifference" standard.  Caraballo has not identified for the Court any controlling authority to support the position that a plaintiff asserting a *Monell* claim is entitled to entire underlying investigative files.

In support of the claim that the Court overlooked controlling decisions in issuing its Order, Caraballo points to *Fiacco v. Rensselaer*, 783 F.2d 319 (2d Cir. 1986), *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995), and *Jenkins v. City of New York*, 388 F. Supp. 3d 179 (E.D.N.Y. 2019).  In *Fiacco*, the Second Circuit reviewed the trial court's denial of City defendants' motion for a directed verdict.  *Fiacco*, 783 F.2d at 332.  Among other things, defendants asserted that the evidence presented at trial was insufficient as a matter of law to show a policy of non-supervision that amounted to a deliberate indifference to the use of excessive force by officers.  *Id.* at 331.  The evidence in *Fiacco* "consisted principally of notices of claims that had been filed against the City alleging police brutality, the testimony of several of

---

CCRB investigator[.]"  Trans. 6:5-20.  An IAB closing report would be substantially the same as a CCRB closing report and would include investigators' "final analysis and their final determination of the investigation."  The underlying IAB investigative file might contain, among other things, DD5 or audio interviews, photographs, and other police paperwork.  Trans. 6:5-20.

the claimants, and the testimony of police chief Stark with respect to his handling of these complaints." *Id.* at 323.

The Court held that "[this] evidence was sufficient as a matter of law to permit a rational juror to find that the City had a policy of nonsupervision of its police officers that amounted to a deliberate indifference to their use of excessive force." *Id.* at 332.  Similarly, in *Vann* "the Second Circuit found that the plaintiff proffered sufficient evidence to prove that the City had been deliberately indifferent because, despite receiving numerous complaints against the particular officer who assaulted the plaintiff, the City failed to take meaningful measures to monitor the officer and deter further incidents." *H.H. v. City of New York*, No. 11-CV-4905 (NG) (ST), 2017 WL 3396434, at *7 (E.D.N.Y. Aug. 7, 2017) (citing *Vann*, 72 F.3d at 1049–51). While Caraballo is correct that *Fiacco* and *Vann* stand for the general proposition that a plaintiff can satisfy *Monell*'s "deliberate indifference" standard by demonstrating a pattern of inadequate investigation into previous complaints, it does not follow that Caraballo is necessarily entitled to the entire investigative files.  That is not the holding of either *Fiacco* or *Vann*, and Caraballo has not identified any authority—controlling or otherwise—that interprets those decisions to require the Court to permit such discovery.

Caraballo also point to *Jenkins v. City of New York*, a case in which the Court held that "a reasonable juror could conclude that the persistent inadequacies in the CCRB and IAB investigations demonstrate that City officials 'simply did not care what a thorough investigation would reveal and were indeed indifferent to whether or not excessive force was used.'"  388 F. Supp. 3d 179, 191 (E.D.N.Y. 2019) (quoting *Fiacco*, 783 F.2d at 331) (alterations omitted).  Like *Fiacco* and *Vann*, *Jenkins* stands for the general proposition that, as a matter of law, deliberate indifference can be established by evidence of a pattern of inadequate investigation.  And like

*Fiacco* and *Vann*, *Jenkins* does not speak to whether underlying investigative files are necessarily discoverable.  The Court in *Jenkins* reached its holding after "[a] review of the CCRB *Closing Reports* in the record" and "IAB Resume and the IAB *investigation reports*[.]" *Jenkins*, 388 F. Supp. 3d at 188–90 (emphasis added).  While Caraballo asserts that denying Caraballo's request for entire underlying investigative files operates as a dismissal of his *Monell* claim, s*ee* Pl.'s Mem. Supp. at 6, *Jenkins* demonstrates that this is simply not the case.  *Jenkins* only lends additional support to the Court's conclusion that closing reports can provide sufficient information to demonstrate a pattern of inadequate investigations and that Caraballo's request for underlying files is unnecessarily broad.

## IV.    LABELED PHOTOGRAPHS OF THE INDIVIDUAL DEFENDANTS

Caraballo also asks the Court to grant reconsideration of its denial of Caraballo's motion to compel labeled photographs of each individual defendant on the grounds that the Court "overlooked the law in this circuit which routinely grants the production of officer photographs in similar situations as the instant matter."  Pl.'s Mem. Supp. at 11.  During the June 26 conference, Plaintiff's counsel argued that such discovery is necessary because the video of the incident is "blurry"; photographs are necessary so Caraballo can "identify the officers and at what point they engaged in the conduct that was depicted in the video."  Trans. 11:11-17.  A nearly identical argument is now offered in support of the instant motion for reconsideration. *See, e.g.*, Pl.'s Mem. Supp. at 9.  However, Caraballo has not offered any additional case law or controlling authority to justify reconsideration.  Caraballo directs the Court's attention to four cases:  *Beckles v. City of New York*, 08-CV-3687 (RJH) (JCF), 2010 WL 1841714, (S.D.N.Y. May 10, 2010); *Snoussi v. Bivona*, 05-CV-3133 (RJD) (LB), 2009 WL 701007 (E.D.N.Y. Mar 3, 2009); *Murphy v. West*, 533 F. Supp. 2d 312, 317 (W.D.N.Y. 2008); and *Lozano v. City of New*

*York*, No. 88 CIV. 0659 (SWK), 1992 WL 116433 (S.D.N.Y. Apr. 17, 1992). *See* Pl.'s Mem. Supp. at 9. All four cases were explicitly referenced in Caraballo's motion to compel, *see* Mot. Compel at 3; therefore, none are matters of which the Court was unaware when it denied that motion. For that reason alone, reconsideration is unwarranted. Moreover, even if the aforementioned cases had not already been cited to the Court, none are controlling. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

## V.     CONCLUSION

For the foregoing reasons, Caraballo's motion for reconsideration is **DENIED**. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 33.

It is SO ORDERED.

Dated:  August 20, 2020
        New York, New York

Edgardo Ramos, U.S.D.J.