UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID CARABALLO,

                Plaintiff,

– against –

CITY OF NEW YORK, JONATHAN EPPS, JONATHAN SUERO, *and* ANTHONY MANGANO,

                Defendants.

**OPINION & ORDER**

18-cv-10335 (ER)

RAMOS, D.J.:

    David Caraballo brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that New York City Police Department ("NYPD") Officers Jonathan Epps, Jonathan Suero, and Anthony Mangano (collectively, the "Officers") violated his Fourth, Fifth, and Fourteenth Amendment rights. Caraballo also brings a *Monell* claim against the City of New York (the "City"). Pending before the Court is Defendants' motion for summary judgment in light of Caraballo's prior entry into a general release barring the instant claim. For the reasons discussed below, Defendants' motion is GRANTED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    On November 7, 2015, Caraballo entered a building located at 15 St. James Place in New York City. Doc. 1 ¶ 23. Two of the Officers, dressed in plainclothes and without any identifying markers, followed Caraballo into the building and began attacking him, "placing [his] head, neck, and arms into painful positions while also using their bodyweight to restrain [him]." *Id.* ¶¶ 24, 32, 34. Caraballo was punched "in his face, head, back, and ribs." *Id.* ¶¶ 36, 39. Eventually, Caraballo was arrested and "handcuffs were placed on [him] excessively tightly, causing extreme pain[.]" *Id.* ¶ 40.

    Caraballo filed this action on November 6, 2018, alleging, *inter alia*, that during the course of his November 7, 2015 arrest, the Officers subjected him to excessive force,

violating his Fourth and Fourteenth Amendment rights.  *Id.* ¶ 45.  Caraballo also alleges a claim for municipal liability against the City for "its policies, customs, and practices, [that] directly caused the constitutional violations" he suffered.  *Id.* ¶ 48.

On February 19, 2019, Defendants filed their answer, raising eleven affirmative defenses, none of which included a release defense pursuant to Fed. R. Civ. P. 8(c)(1). Doc. 17.  On October 3, 2019, a Civil Case Discovery Plan and Scheduling Order ("Scheduling Order") was entered.  Doc. 21.  The Scheduling Order required that amended pleadings be filed by December 1, 2019.  *Id.* ¶ 4.  On October 3, 2019, Defendants served Caraballo with interrogatories, one of which asked Caraballo to "[i]dentify each lawsuit to which [he] has been a party, including the court in which the matter was pending, the docket or index number, and the disposition of the matter."  Doc. 103-1, Interrogatory No. 17.  Caraballo objected to this interrogatory "on the grounds that the request [was] irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and [sought] information that is public and/or equally accessible to defendants."  *Id.*  Caraballo also objected to this interrogatory on the grounds that "it [was] outside the scope of Local Rule 33.3(a), requiring no response."  *Id.*  Neither Caraballo nor Defendants amended their pleadings by December 1, 2019.  Approximately a year and a half later, on March 31, 2021, the Court granted an application by both parties to adjourn the deadline to complete depositions *sine die* pending the outcome of a proposed settlement conference.  Doc. 62.

On November 4, 2021, after settlement talks failed, the Court granted the parties' joint motion seeking an extension to complete discovery.  Doc. 81.  On January 22, 2022, the Court issued an order for the Mohawk Correctional Facility in Rome, New York, to produce Caraballo for a deposition on January 26, 2022, more than three years after the action was filed.  Doc. 85.  During Caraballo's deposition, Defendants learned, for the first time, that Caraballo had previously entered into a settlement agreement with the City to resolve a different complaint.  Doc. 103 ¶ 6.  Immediately after Caraballo's deposition,

Defendants searched their records, including the OAISIS database,[1] for Caraballo's prior settlements with the City, which yielded no results. *Id.* ¶¶ 7, 8, 12. Defendants then contacted the Office of the New York City Comptroller ("Comptroller's Office") directly for help searching for claims filed by Caraballo against the City. *Id.* ¶ 13. On January 31, 2022, the Comptroller's Office provided the Defendants with a settlement agreement signed by Caraballo on February 21, 2018 ("2018 Settlement").[2] *Id.* ¶¶ 14, 15; Doc. 88-2. In connection with the settlement of that claim, Caraballo executed a "General Release." Doc. 88-2 at 3–4. Pursuant to its terms, Caraballo

> release[d] and forever discharge[d] the City of New York, and all past and present officials, officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York, and all other individually named defendants and/or entities represented and/or indemnified by the City of New York . . . from any and all liability, claims, or rights of action alleging a violation of civil rights and any and all claims, causes of action, suits . . . known or unknown . . . against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE.

*Id.* at 3. By its terms, the General Release covers the November 7, 2015 incident that is the basis of the instant case because it was executed after the incident and does not include any exception for it. The 2018 Settlement and General Release were only loaded into the OAISIS database on January 31, 2022, after it was determined that it had not previously been posted. Doc. 103 ¶¶ 36, 37.

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that Caraballo's claims: (1) are barred by the terms of the General Release; and (2) Caraballo has failed to adduce any evidence of an

---

[1] The OAISIS system is a database maintained by the Office of the New York City Comptroller ("Comptroller's Office"). Doc. 103 ¶ 9.

[2] Defendants learned that on July 24, 2017, Caraballo filed a Notice of Claim ("NOC") with the Comptroller's Office, claim number 2017PI020855. Doc. 88-1. The NOC alleged, *inter alia*, various civil rights violations and claims arising under New York State law against the City and the New York City Department of Correction, in connection with an incident that occurred on June 17, 2017, during which Caraballo alleged that, while incarcerated, he was assaulted by another inmate. *Id.* Thereafter, on February 21, 2018, Caraballo agreed to a settlement with the Comptroller's Office to resolve that claim. Doc. 88-2.

3

unconstitutional police practice by the City that would give rise to a claim for municipal liability.  Doc. 86.

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a), 56(c)(1)(A).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal citation and quotation marks omitted).  In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To prevail, "the non-moving party must

4

set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, (1986)).

"[S]ummary judgment should only be granted '[i]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)).

### B. Amendment to include Affirmative Defense

A party responding to a pleading "must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). "Failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (internal quotation marks omitted). However, "a district court may . . . entertain [untimely] affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003).

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). At the outset of litigation, "a party may amend its pleading once as a matter of course within" certain proscribed time limits. Fed. R. Civ. P. 15(a)(1). Outside those limits, a party may amend only with consent of the opposing parties or with leave of the court. Fed. R. Civ. P. 15(a)(2). At that stage, Rule 15 operates under a "permissive standard [that] is consistent with our 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citing *New*

*York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Once "the district court issues a scheduling order setting a date after which no amendment will be permitted," the permissive standard is replaced by a stricter, Rule 16, good cause standard. *Sacerdote*, 9 F.4th at 115. While amendment is certainly possible, a party must show "good cause" under Rule 16(b)(4) to modify a scheduling order. *Id.*

### III. DISCUSSION

#### A. The General Release

The question before the Court is whether the General Release bars Caraballo's claims against Defendants in the instant suit. Defendants contend that it does because the General Release's language is broad and unambiguous. Doc. 89 at 11. There is no dispute that the General Release encompasses the Defendants and the type of claim at issue here. The Defendants, as police officers, easily qualify as "officials," "agents" or "employees" of the City, or individual defendants or entities "represented and/or indemnified by the City." Doc. 88-2 at 3. And the claims advanced here allege a "violation of civil rights." *Id*. Defendants argue that because the terms of the General Release are unambiguous, summary judgment should be granted as there is no dispute of material fact. Doc. 89 at 9.

Caraballo does not dispute the contents of the General Release or the effect of a properly pleaded release defense. Instead, Caraballo argues that Defendants should be precluded from relying on the General Release now because they failed to raise the affirmative defense of release in their answer. Doc. 93 at 9. Caraballo states that in over three years since filing their answer, Defendants never sought leave to file an amended answer to include the affirmative defense of release and therefore, should not be allowed to do so now. *Id.*

Defendants point to *Hackshaw v. Urquiaga*, where this Court granted defendants' motion to dismiss because the plaintiff's signed release, identical to the general release in the instant motion, barred the plaintiff's claims predating that release. *Hackshaw v.*

6

*Urquiaga*, No. 15 Civ. 4005 (ER), 2016 WL 6534253 (S.D.N.Y. 2016); *see also* Doc. 89 at 10–11.  However, *Hackshaw* is inapplicable here because the defendants in *Hackshaw* raised the affirmative defense of release in their answer.  *Hackshaw v. Urquiaga*, No. 15 Civ. 4005 (ER), Doc. 26 ¶ 18, ("Answer to Second Am. Compl.").  Defendants' reliance on *Carter v. Mingo* is equally unavailing because the defendants in *Carter* did not file an answer and instead, brought a summary judgment motion to dismiss claims covered by the release.  *Carter v. Mingo*, No. 16 Civ. 7736 (ER), Doc. 32, ("Mem. of Law in Supp. of Defs.' Limited Mot. for Summ. J."); *see also* Doc. 89 at 10–11.

Defendants ultimately concede that the affirmative defense of release was not pleaded in their answer because they were not aware of Caraballo's prior settlement with the Comptroller's Office until Caraballo's deposition.  Doc. 104 at 5.

### B. Leave to Amend the Pleading

In the alternative, Defendants contend that "all factors weigh in favor of invoking the Court's ability to *sua sponte* amend defendants' Answer to include the General Release affirmative defense."  Doc. 104 at 5.

Where an affirmative defense is raised in a summary judgment motion, "the district court may construe the motion for summary judgment as a motion to amend the defendant's answer."  *Saks*, 316 F.3d at 350–51 (citations omitted).  The Court considers the amending Defendants' answer under Rule 16 because this motion arrives three years after the deadline for amending pleadings set forth in the Scheduling Order.  Doc. 21 ¶ 4; *see also* Fed. R. Civ. P. 16(b)(4).

Under Rule 16, "[a] finding of good cause depends on the diligence of the moving party."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  Defendants have demonstrated that, given the particular circumstances of this case, they acted diligently to amend their answer.

Caraballo relies on *Liverpool v. Davis* for the proposition that being unaware of a previously signed general release does not constitute good cause.  *Liverpool v. Davis*, No.

7

17 Civ. 3875 (KPF), 2020 WL 7398745, at *3 (S.D.N.Y. 2020).  In *Liverpool*, plaintiff filed suit against the City on May 22, 2017, for an incident that occurred on July 9, 2014.  *Id*. at *1–2.  At plaintiff's deposition on February 22, 2018, approximately nine months after filing suit, defendants learned that the plaintiff had settled two prior civil cases with the City.  *Liverpool v. Davis*, No. 17 Civ. 3875 (KPF), Doc. 57-3 at 48:16–52:11 ("Liverpool Dep.").  Defendants made no apparent effort to determine if plaintiff had signed a release with respect to those settlements.  However, in connection with settling one of the prior lawsuits, plaintiff signed a general release on February 29, 2016.  *Liverpool*, 2020 WL 7398745, at *2.  The New York City Law Department ("Law Department") maintained a copy of the signed general release.  *Id.* at *4.  That release covered the incident that was the focus of the later lawsuit.  *Id*. at *2.

Over a year after plaintiff's deposition, on March 7, 2019, defendants brought a summary judgment motion which the court adjudicated on February 26, 2020.  *Id.*  On May 5, 2020, the court held a conference "to discuss a schedule for trial, or in the alternative, to discuss alternative dispute resolution."  *Id.*  The court then referred the case to the magistrate judge, who held a settlement conference on July, 21 2020.  *Id.*  The magistrate judge held a second settlement conference on September 9, 2020, and a third on September 30, 2020.  *Id.*  At the third conference, defendants sought to rely on the general release for the first time but "fail[ed] to explain their . . . delay in its production."  *Id.* at *2, 3.  On October 5, 2020, two and a half years after they learned of plaintiff's prior settlements with the City, defendants filed a letter seeking leave to file an amended answer to assert the defense of release.  *Id.* at *2.

The court denied the motion, holding that being unaware of a plaintiff's prior signed general release did not satisfy the good cause standard because the Law Department "offered no 'good cause' for their delay of more than three years in locating a piece of paper they . . . have possessed since before [p]laintiff filed suit."  *Id.* at *4.  *Liverpool* highlighted that while the Law Department was "a large organization, with

8

many employees and high turnover, and . . . handle[d] many cases across several departments . . . . [they] essentially failed to review their files on Plaintiff — for more than three years." *Id*.

The facts of this case are markedly different. In the first instance, the settlement here was with a different New York City agency, the Comptroller's Office, "[n]ot the New York City Law Department . . . the special federal litigation division, or the torts division." Doc. 92-4 at 8:15–17. In *Liverpool*, "a simple search of the files maintained by [d]efendants and their counsel for [p]laintiff's name should have turned up the release" because the Law Department maintained a copy of the release. *Liverpool*, 2020 WL 7398745, at *3. In the instant case, it is clear that any search within the Law Department prior to Caraballo's deposition would have been futile because the General Release was maintained only in physical form, in a different branch of the New York City government. Doc. 92-4 at 8:5–9; Doc. 103 ¶ 36. Indeed, on January 26, 2020, immediately after Caraballo's deposition, a search "conducted [on OAISIS] by New York City Law Department employees regarding [Caraballo]'s prior settlements with the City of New York yielded no results" because the file had not been uploaded to OAISIS. Doc. 103 ¶¶ 8, 12; Doc. 92-3 at 4:22–24. Defendants then contacted the Comptroller's Office directly and were able to locate the release. Doc. 103 ¶¶ 13, 14. Defendants thus acted with diligence, checking their files immediately and bringing the General Release to the Court's attention seven days after the deposition. *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507–08 (S.D.N.Y. 2013) (finding plaintiff acted diligently in moving to amend the complaint following expiration of scheduling order deadline upon learning new, relevant facts in discovery); *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (finding that plaintiff moved diligently in seeking leave to amend two months after new facts were learned at deposition).

Secondly, Defendants emphasize that Caraballo failed to disclose the existence of the 2018 Settlement in response to the interrogatory that specifically requested such

9

information.  Doc. 104 at 5.  Defendants argue that Caraballo should have disclosed the 2018 Settlement when it was first requested because it was unquestionably relevant.  *Id.* at 7.  As Defendants argue, "the purpose of [Interrogatory 17 was] to discover information as to plaintiff's prior lawsuits and settlements with the City."[3]  *Id*.

Defendants have established good cause by demonstrating that despite their efforts, they did not know of nor had access to Caraballo's past settlement.  *Soroof Trading Dev. Co., Ltd.*, 283 F.R.D. at 147 ("Good cause is demonstrated by a showing that 'despite its having exercised diligence, the applicable deadline could not have been reasonably met' by the [moving party]." (citing *Oscar v. BMW of North America*, No. 09 Civ. 11, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011)).

Courts are instructed to consider leave to amend under Rule 15 after finding good cause under Rule 16.  *Moore v. Publicis Groupe SA*, No. 11 Civ. 1279 (ALC) (AJP), 2012 WL 2574742, at *5 (S.D.N.Y. June 29, 2012) ("After the moving party demonstrates diligence under Rule 16, the court applies the standard set forth in Rule 15 to determine whether the amendment is proper.").  "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Defendants argue that Caraballo would suffer no prejudice because he signed and knew of the release himself.  Doc. 104 at 6.  Defendants contend that they, in fact, were the ones prejudiced by litigating this entire case without being aware of the General Release.  *See id.* at 5.  Caraballo argues that Defendants caused him to "expend over three years litigating this matter, incurring numerous hours of attorney time, as well as expenses that include the costs of holding the three depositions of Defendants." Doc. 93 at 16.  However, lost time and attorney's fees do not support a claim of prejudice. *See*

---

[3] Local Civil Rule 33.3(a) provides that, "interrogatories will be restricted to those seeking . . . the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature."

10

*Block*, 988 F.2d at 351 (holding that "solely . . . time, effort and money . . . expended in litigating" did not constitute prejudice).  Though the delay has undoubtedly been long and the wasted resources costly, Caraballo litigated this case with an awareness that he signed the General Release that would have barred his claims.  Therefore, the Court finds no prejudice against Caraballo in granting Defendants leave to amend.

Finally, Caraballo urges this Court not to grant leave for Defendants to amend their answer because of the Defendants' "bad faith attempts to cover up their lack of diligence . . . ."  Doc. 107 at 4.  Caraballo argues that Defendants disingenuously claim they were unaware of the 2018 Settlement before his deposition.  *Id*.  Caraballo contends that the metadata of the General Release PDF suggests that the report "had been generated from the OAISIS system on January 31, 2022" and therefore, the Defendants made false statements when, at the February 2, 2022 conference they claimed that paperwork did not exist in the OAISIS system.  Doc. 93 at 15.  Caraballo does not provide any proof of the documents existing on OAISIS before January 31, 2022.  Quite the opposite, the record demonstrates that Defendants consistently represented that they first learned of the 2018 Settlement at Caraballo's deposition and that it was only scanned into OAISIS on January 31, 2022, *after* the Law Department made the Comptroller's office aware that it had not been uploaded.  *See* Doc. 92-3 at 4:19–5:6; Doc. 92-4 at 8:5–9; Doc. 103 ¶¶ 6, 36, 37; Doc. 103-3 at 2–3.  Accordingly, the Court finds no evidence of bad faith.

For the reasons stated above, the motion for summary judgment to dismiss Caraballo's claims is GRANTED.[4]

---

[4] Accordingly, the Court need not address Caraballo's *Monell* claim to hold the City liable as the General Release discharges the City of any civil rights liability.

11

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment pursuant to the General Release is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 86, and close the case.

It is SO ORDERED.

Dated:  March 29, 2023
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.